UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID WILLIAM GIESE,<br><br>Defendant. | 4:17-CR-40019-01-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, David William Giese, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 49. Plaintiff, the United States of America, opposes the motion. Docket 58. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

Giese pleaded guilty to bank robbery in violation of 18 U.S.C. § 2113(a). Docket 20. On November 6, 2017, the court sentenced Giese to 48 months in custody and 4 years of supervised release. Docket 33 at 2-3; Docket 39 at 2-3. Giese is eligible for home confinement on November 8, 2020, and his current anticipated release date is April 2, 2021. Docket 57 at 194-95.

Giese is incarcerated at a Federal Correctional Institution (FCI) Milan in Milan, Michigan. *Id.*; Docket 49 at 2. As of September 16, 2020, there are currently zero active COVID-19 cases among FCI Milan's inmates and staff, three deaths from COVID-19, and 87 inmates and 55 staff have recovered from COVID-19. *See BOP: COVID-19 Update*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Sept. 18, 2020).

Giese is 30 years old. Docket 57 at 1. His chronic medical conditions include severe opioid use disorder, a heart condition, and pain throughout his body. *Id.* at 12, 25; Docket 28 at 10; Docket 49 at 1. In 2018, Giese was diagnosed with opioid use disorder. Docket 57 at 12, 82, 121, 128. In February of 2020, while in custody, Giese was seen at the clinic and was offered medication-assisted therapy (MAT) in order to help reduce cravings or block the activity of opioids during release. Docket 57 at 173. Giese declined the treatment for his opioid use disorder. *Id.* Giese also claims that he suffers from a heart condition, but his medical records provided by the Bureau of Prisons (BOP) do not reflect this heart condition. Docket 49 at 1. *But see* Docket 57. Giese also suffered from meningitis in high school. Docket 28 at 10; Docket 49-3 at 1.

On April 11, 2020, Giese alleges that he completed and filed a request for early release with officials at the BOP facility. Docket 49 at 2. There is no copy of his request within the record. On April 21, 2020, counsel, on behalf of Giese, submitted a request to the Unit Manager. *Id.*; Docket 49-1. Counsel requested that Giese be released into home confinement. Docket 49-1. The letter claimed that Giese was at greater risk than the typical prisoner due to COVID-19 and his meningitis diagnosis in 2006. *Id.* at 2. The warden reviewed one of Giese's requests on April 30, 2020 and denied the request on May 1, 2020. Docket 57 at 198.

Giese's counsel filed a motion with the court for relief under the First Step Act. Docket 49.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Giese argues that "the unprecedented and extraordinary risk posed by the global COVID-19 pandemic" along with Giese's health conditions satisfies the "extraordinary and compelling standard" under § 3582(c)(l)(A)(I). Docket 49 at 1. Giese requests a sentence of time served and if this court deems necessary, release into home confinement as a condition of his supervised

release. *Id.* at 1, 8.

## I.   Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Giese first submitted a request for home confinement on April 11, 2020. Counsel for Giese submitted a request for compassionate release on April 21, 2020. The warden received one of these requests on April 30, 2020. The 30-day period expired, at the latest, on May 30, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Giese's motion is ripe for review on the merits.

## II.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing

4

Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the

5

Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Giese has failed to show that his medical conditions rise to extraordinary and compelling circumstances.

Giese contends that his circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 49 at 5-8. Giese argues that his health conditions—heart condition and meningitis—put him at high-risk of severe illness if he contracts COVID-19. *Id.*

6

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Sept. 11, 2020). The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *may* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, and several others. *Id.*

Giese's medical conditions—opioid use disorder, body pains, meningitis, and his unspecified heart condition—are not listed as a medical condition that might increase or will increase the risk of severe illness from COVID-19. Additionally, Giese has not identified how any of his medical conditions prevent him from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

Even if some of these chronic conditions would put Giese at a higher risk of severe illness if he contracted COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a

7

mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest he has not been able to manage these conditions while in the prison environment. Giese is receiving medical attention and treatment for these conditions, which all appear to be stable or controlled. *See* Docket 57 at 2, 4, 6, 14, 57, 62, 71, 95, 98-99, 108, 111, 114, 119, 168-169. "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation omitted). Thus, the court finds that Giese does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

Additionally, Giese's motion has not shown that the BOP's response to the pandemic at FCI Milan is currently inadequate. *See United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("[T]he mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."). As of September 16, 2020, there are currently zero active COVID-19 cases among FCI Milan's inmates and staff, although there have been three deaths from COVID-19 and eighty-seven inmates and fifty-five staff have recovered from COVID-19. *See BOP: COVID-19 Update*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Sept. 16, 2020). These numbers show that at some point COVID-19 infiltrated FCI Milan, but since that time the BOP has taken major steps in

8

stopping the spread of COVID-19. *See* Docket 58-2 (detailing current procedures used at FCI Milan to prevent the spread of COVID-19 from the associate warden); *see also United States v. Williams*, 2020 WL 4756738, at *4 (E.D. Pa. Aug. 17, 2020) ("Thus, it appears that the facility has been responding to and defending against the threats of the virus in a vigorous and generally effective manner."). Although Giese is unable to practice preventative measures as effectively in custody as he would in home confinement, FCI Milan encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See* Docket 58-2; *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 18, 2020). Giese can do all those recommendations to some extent.

The court believes that Giese's medical conditions are appropriately managed at FCI Milan, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Giese's health conditions, such ailments, coupled with the present conditions at FCI Milan, do not establish extraordinary and compelling reasons justifying his early release.

Even assuming Giese's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Giese walked into a Wells Fargo bank in Yankton, South Dakota,

9

wearing a mask and carrying a box. Docket 28 ¶ 8. Giese ordered the bank tellers to give him money. *Id.* Giese also told the tellers that the box he was carrying was a bomb, and he would detonate it if anyone called for help. *Id.* Giese stole $6,900 from the bank. *Id.* ¶ 14. At sentencing, this court stated that this was the first case that the court has seen where a bank is robbed by one of its own customers who personally knows the tellers. Docket 41 at 42. In addition, it was also the first time this court had seen a robber speak to those same tellers—at work and even at their homes—after the robbery in order to retrieve information about what the tellers knew about the bank robbery. *Id.* The bank employees suffered from emotional trauma and received counseling due to the robbery. Docket 28 ¶ 15. At sentencing, the bank manager stated that she recalled looking at the fear within her employees' eyes and feeling helpless. Docket 41 at 28. She began questioning whether she was going to die that night and worried about her family. *Id.* Giese's sentencing guidelines were determined to be 41 to 51 months in custody. Docket 28 ¶ 67. The court factored in Giese's lack of criminal history and sentenced him to the middle of his guideline range to 48 months in custody. Docket 41 at 44-45; Docket 33 at 2.

 Giese has served approximately 64% of his full term and approximately 75% of his statutory term. Docket 57 at 195. And he appears, to his credit, to have worked on improving himself in custody. *Id.* at 191-92; Docket 49 at 3. But the original sentence was chosen with care, considering Giese's and his community's needs and all of the other applicable sentencing factors.

Therefore, the court finds that the sentence of 48 months in custody followed by 4 years of supervised release continues to be appropriate for the seriousness of the crime to which he pleaded guilty.

## CONCLUSION

Giese has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 49) is denied.

Dated September 25, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE